UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY, as subrogee of THE SPRINKLER SHOP, INC., an Idaho corporation,<br><br>      Plaintiff,<br><br>      v.<br><br>PLASTIC WELDING AND FABRICATION, LTD., a Texas limited partnership, AUTOMATED THREADED ROD GALVANIZING LTD., a Texas limited partnership, dba Zincubator, Ltd., RODGP, L.L.C., a Texas limited liability company, WILLIAM DAVID JAYE, an individual, and DOES 1-10,<br><br>      Defendants. | Case No. 4:18-cv-00333-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Three motions for summary judgment are pending before the Court. First, Defendant Plastic Welding and Fabrication, Ltd.'s (PWF's) motion for summary judgment as to all claims. Dkt. 26. Second, William "David" Jaye's, Automated

MEMORANDUM DECISION AND ORDER - 1

Threaded Rod Galvanizing Ltd.'s, and RODGP, LLC's (Jaye Defendants') motion for summary judgment as to all claims. Dkt. 38. Third, Defendant David Jaye's motion for summary judgment as to his cross-claim against PWF. Dkt. 39. The motions have been fully briefed and are ripe for decision. The parties consented to the Court ruling on the motions absent oral argument to support the Court's efforts to curb the spread of the COVID-19 pandemic. In consideration thereof, and pursuant to Idaho Local Civil Rule 7(d)(1)(b), the Court determines that oral argument is not necessary on these motions. As such, and after careful consideration, for the reasons that follow the Court will deny PWF's motion for summary judgment, deny in part and grant in part Jaye Defendants' motion for summary judgment, and deny Defendant/Cross-Claimant David Jaye's motion for summary judgment.

## BACKGROUND

Employers Mutual Casualty Company (Employers) brings the claims in this matter as subrogee of The Sprinkler Shop, Inc. (TSS). *Am. Compl.*, Dkt. 11 at 2. TSS operates a carbon steel galvanizing plant in Paul, Idaho. *Id.* at 3. The galvanizing process utilizes eight separate tanks, each containing different liquids, including water, sulfuric acid, neutralizers, and molten zinc. Dkt. 34-2 at 8. In the early morning hours of December 24, 2016, a fire occurred inside the galvanizing plant, resulting in significant damage to the property. Dkt. 11 at 3. The fire

originated inside tank number 3, which contained sulfuric acid. *Id.;* Dkt. 34-2 at 8. The sulfuric acid removes oxides from the steel during one step of the galvanizing process. Dkt. 34-2 at 8. The acid is heated using submersible heaters made primarily of graphite and designed to withstand the acidic environment in the tank. *Id.* The motions for summary judgment center on whether there was a defect in the heater in tank 3 that caused the fire.

Employers expended $1,704.051.79 under a commercial insurance policy for the costs of investigation, remediation, and repairs resulting from the fire. Dkt. 11 at 4. Employer's First Amended Complaint asserts claims against four named defendants: Plastic Welding and Fabrication, Ltd., (PWF) the Texas-based company that allegedly designed and manufactured the heater at issue, sold replacement parts for heaters to TSS, and advised TSS on modifications and repairs to heaters from time to time; Automated Threaded Rod Galvanizing, Ltd., (Automated) another Texas-based company that allegedly designed and once manufactured the heater at issue; RODGP, LLC, the alleged General Partner of Automated; and William David Jaye, a Manager of RODGP and the original designer and holder of the patent for the heater. *Am. Compl.*, Dkt. 11 at 2-3.

Employers alleges various products liability-based claims against each of the Defendants. *Id.* at 4-6. Employers asserts Defendants were negligent in the design,

**MEMORANDUM DECISION AND ORDER - 3**

testing, manufacture, inspection, marketing, and distribution of heaters and their component parts and failed to eliminate unreasonable risks of harm *Id.* at 4. Employers claims also that Defendants knew or should have known the heaters would fail under foreseeable and normal use. *Id.* Employers further argues Defendants breached implied warranties of fitness and merchantability. *Id.* at 4-5. Employers asserts the Defendants are liable because the heaters and their component parts were defective and unreasonably dangerous when they left the Defendants' control and were not reasonably safe for their marketed purpose. *Id.* at 5-6. Finally, Employers alleges Defendants are jointly and severally liable for damages caused by the fire because they were acting in concert to sell the heaters and were agents for each other in such sales. *Id.* at 6. Employers seeks damages, including pre-and-post judgment interest. *Id.*

      In answer to the Amended Complaint, PWF denies all of Employer's claims. *PWF Ans.*, Dkt. 16. PWF's affirmative defenses include that, Employers failed to state a claim for which relief can be granted, TSS was negligent and its damages were proximately caused by persons other than PWF, and TSS's claims and damages are barred by Idaho Code §§ 6-1404 and 6-1405 due to TSS's assumption of risk, misuse, or modification of the heater at issue. *Id.*

      Defendants David Jaye, Automated, and RODGP filed a joint answer, which

**MEMORANDUM DECISION AND ORDER - 4**

also denies all of Employer's claims. *Jaye Defendants Ans.*, Dkt. 18. In addition to asserting the affirmative defenses of failure to state a claim, lack of privity in contract, and raising the issue of causation, Defendant David Jaye asserts a cross-claim as to PWF. *Id.* at 2. Therein, Jaye points to the License Agreement he entered into with PWF in May 2006, which granted PWF rights and obligations pertaining to Jaye's patent for the "Thermoflow Heating System." *Id.* at 3. Jaye asserts that pursuant to that agreement, PWF is required to indemnify him for any damages that result from PWF's manufacture and distribution of the heaters. *Id.* at 3-4. In answer to the cross-claim, PWF asserts it is not liable under the agreement for damages proximately caused by parties other than PWF. *PWF Ans. to Cross-Claim*, Dkt. 22. The three pending motions for summary judgment were filed against this procedural background.

     PWF's motion asserts TSS has no evidence to support any of its claims. Dkt. 26. Jaye Defendants likewise assert no facts exist to support any claims against them because they did not take part in the design, manufacture, or distribution of the heater at issue that was allegedly the source of the fire. Dkt. 39; Dkt. 39-1 at 2. Finally, Defendant David Jaye's motion seeks summary judgment on his cross-claim against PWF, asserting PWF has a contractual duty to indemnify Jaye, and the Court should issue a declaration of Jaye's rights under the agreement. Dkt. 39-1

at 5-6. The Court will analyze the merits of the motions below.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any *material* fact—a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is

not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

## ANALYSIS

**1.     PWF's Motion for Summary Judgment – Docket 26**

In or around 2008, TSS purchased three heaters from PWF. Dkt. 26-2 at 6. The heaters were delivered in their unassembled state—which included three component parts: a plastic cabinet, a burner, and an L-shaped graphite tube. *Id.* TSS assembled the heaters and also installed other necessary parts of the system at the plant, including the gas train, wiring, and a control panel. *Id.* at 6-7; *Howard Dep.*, Dkt. 26-6 at 4. TSS completed the heater assembly in 2013. Dkt. 26-6 at 5.

PWF admits it sold the heaters to TSS. PWF also does not challenge the existence of the slit or gap found in the graphite tube after the fire. PWF argues, however, that Employers has presented no evidence that shows the slit existed, or a defect in design or manufacturing existed, when the heater's component parts left its control in 2008. Dkt. 26-1 at 2. PWF argues also that, the record evidence shows that the heater's graphite tube had been altered after it left the control of PWF. *Id.*

Under Idaho law, a plaintiff asserting a products liability claim bears the burden of proving (1) injury by the product; (2) that the injury was the result of or proximately caused by a defective or unsafe product; and (3) that the defect existed

when the product left the control of the manufacturer. *Massey v. Conagra Foods, Inc.*, P.3d 456, 460 (Idaho 2014) (citing *Farmer v. Int'l Harvester Co.*, 553 P.2d 1306, 1310-11 (Idaho 1976)).

The presence of a product defect is determined on a case-by-case basis. *Id.* at 1311. "A prima facie case [of defect] may be proved by direct or circumstantial evidence of a malfunction of the product and the absence of evidence of abnormal use and the absence of evidence of reasonable secondary causes which would eliminate liability of the defendant." *Id.* Reasonable inferences are permissible in determining whether a product was defective." *Stanley v. Lennox Indus., Inc.*, 102 P.3d 1104, 1107 (Idaho 2004). "A circumstantial evidence showing ... [requires] proof of: (1) the malfunction of the product; (2) the lack of evidence of abnormal use; and (3) proof excluding the possibility of other reasonable causes." *Id.* (citing *Doty v. Bishara*, 848 P.2d 387, 390 (Idaho 1992) (internal citations omitted). A plaintiff is not required to "exclude every possible cause, but only reasonably likely causes." *Farmer* at 1313.

A plaintiff does not carry its "burden of proof by merely proving the fact of the occurrence of an accident." *Id.* "Regardless of the theory under which recovery is sought, the plaintiff, to recover, must establish that the injury complained of is causally related to the defendant's act or omission." *Mico Mobile Sales & Leasing,*

*Inc. v. Skyline Corp.*, 546 P.2d 54, 57 (Idaho 1975); *Corbridge v. Clark Equip. Co.*, 730 P.2d 1005, 1007 (Idaho 1986). Finally, a plaintiff must prove that the defect in the product made it "unreasonably dangerous." *Farmer* at 1313 (citing Restatement (Second) of Torts § 402A, Comment I (1965)).

In this case, PWF argues Employers cannot meet its burden of showing direct or circumstantial evidence of defect. Dkt. 26-1 at 8. In response, Employers argues the split or gap that was identified in the heater's graphite tube after the fire is direct evidence of defect. Dkt. 34 at 2. As stated above, PWF does not dispute the presence of the split in the graphite tube. *Id.* Rather, PWF confirms that the graphite tubes that leave its production facilities are specifically machined to be smooth and contain no gaps. *Id.*

Thus, the parties seem to agree that a graphite tube with a slit or gap like the gap on the tube for the tank 3 heater, is a defective tube. Importantly, however, the presence of a defect or malfunction alone is insufficient to establish a prima facie case of products liability. As stated above, Employers must also show or raise a genuine issue that the fire was caused by the gap in the tube and that the defect existed when the heater parts left the control of PWF.

Douglas Barovsky, an electrical engineer and certified fire and explosion investigator and one of Employer's experts, found that the "origin of the fire" was

MEMORANDUM DECISION AND ORDER - 9

"narrowed down to the #3 tank heater's gas burner mounting flange." Specifically, "the area in which the #3 gas burner's flame tube interfaces with the split in the mounting flange." *Barovsky Expert Report,* Dkt. 26-9 at 15. Mr. Barovksy's preliminary hypothesis is that the split in the mounting flange permitted heat to melt the heater's polymer enclosure and eventually the heat contacted the flame tube, which ignited the polymer. *Id.* at 16. Mr. Barovsky opined also that, "[a]ctions, including revisions, modifications, maintenance and service may have played a role in this fire." *Id.*

Employers also offers the expert opinions of Ryan Fields, a certified fire inspector who participated in the inspection of the fire scene and later inspections of the heaters. Dkt. 26-9 at 3. Mr. Fields's investigation began at the fire scene. *Field Expert Report*, Dkt. 26-9 at 34. Mr. Fields opined that because there was "noticeably greater damage to the components for tank heater #3" it likely failed. *Id.* Mr. Fields noted, however, that the specific cause of the failure "was not part of [his] assignment." *Id.*

Taken together, the opinions cited above raise a question of material fact, and thus a triable issue for the jury regarding whether the split or gap in the tube caused the fire or led to the fire that damaged TSS's building and property. Thus, the first two elements of a prima facie case of products liability are met for

summary judgment purposes. The Court turns to the final element, which is the requirement that Employers prove the defect existed when the heater left the control of the manufacture, PWF. Notably, at the summary judgment stage, Employers must point to evidence that raises a genuine issue for the jury as to the issue.

The factual allegations offered by Employers to show the alleged defect or malfunction was attributable to PWF are (1) the affidavit of the plant manager, who attests that "to the best of his knowledge" no repairs or modifications were made to the upper portion of the graphite tube; and (2) renderings of PWF's designs for various versions of the graphite tube and flange, one which included a top cap that was cemented on. The Court will discuss each allegation below.

### A.   Potential Graphite Repair

In July 2015, TSS ordered graphite cement from a third party. *Shoemake Dep.*, Dkt. 26-5 at 22; Dkt. 26-6 at 9. According to the plant manager, Seth Howard's deposition testimony, the cement was necessary to fix an issue with one of the graphite tubes at the plant. Dkt. 26-6 at 9. Mr. Howard did not recall, however, what part of the tube needed repair or which tank heater the tube was on, number 3 or number 4. *Id.* In a later affidavit submitted in support of Employer's response to the motion, Mr. Howard's attested that, "to the best of his recollection," the cement was purchased to repair "a portion of a graphite tube

either at or downstream from the 90-degree elbow." Mr. Howard attested also that, "to the best of his knowledge" TSS never machined graphite or modified or changed the design of heater units, including the graphite tubes. *Id.* Dacx Duffin, an owner of TSS, also recalled a discussion with his employees surrounding a repair issue with a graphite tube.[1] Dkt. 26-6 at 28. He could not recall what TSS had to do to the tube. *Id.* Both Mr. Howard and Mr. Duffin testified that they did not know what caused the fire. Dkt. 26-6 at 11 and 30.

After inspection of the fire damaged heater components, PWF's representative, Shaun Shoemake, concluded that the top of the vertical piece of the graphite tube on heater number 3 "was altered or removed and replaced with unmachined graphite pieces that left an open gap or gaps and did not conform to the precise tolerances of the original machined tube." Dkt. 26-3 at 4; Dkt. 26-5 at 22-23. PWF asserts this evidence shows TSS may have modified the top of the graphite tube and created the gap or split. This opinion stands in contrast to Mr.

---

[1] PWF objects to Howard's affidavit, arguing it is inadmissible as it does not lay a foundation establishing he has personal knowledge of the repair formed by one of the TSS employees. PWF takes issue also with the allegation that TSS "never modified or changed the design of heater units." After a careful searching of the record, the Court did not find any such allegation argued by TSS. Instead, the evidence refers to the "repair" of a graphite tube, or the fact that a tube was "rebuilt" or "reinstalled to itself." *See* Dkt. 26-1. However, the Court finds the distinction irrelevant for purposes of summary judgment.

**MEMORANDUM DECISION AND ORDER - 12**

Howard's recollection of a repair made below the 90 degree angle of the tube. Credibility determinations are the province of the jury. Therefore, the statements present a genuine issue of material fact regarding whether the tube in tank no. 3 was repaired, and it so, where. These are questions that go to the ultimate issue of causation.

### B. Other Product Designs

In addition, Employers points out that there were at least two different configurations of the graphite tubes, and one configuration had a separate top cap cemented on to the tube. *Id.* The suggestion being that, if the top vertical portion of tube three did have a cemented piece on top, it could have been a version specifically made with a separate top cap. The allegations regarding top cap design are particularly important in Employer's arguments against the motions for summary judgment. With these allegations, Employers raises a dispute as to the origin of the slit or gap in the top of tube number three. For instance, there is evidence that PWF advised TSS not to use earlier versions of the top-cap. No party has conclusively identified which version of the heater design was being used in tank number 3.

Considering the foregoing, the Court finds there are genuine issues of material fact that preclude summary judgment as to Employer's product liability claims. Therefore, the Court will deny PWF's motion.

## 2.     Jaye Defendants' Motion for Summary Judgment – Docket 38

The Jaye Defendants, which include David Jaye, Automated, and RODGP, bring a motion for summary judgment as to all claims asserted by Employers. Dkt. 38. Therein, Jaye Defendants ask the Court to dismiss all claims against them and to grant David Jaye's motion for a declaration of the indemnification rights he alleges are owed to him by PWF. The arguments and factual allegations underlying these motions are as follows.

Between 1997 and 2000, David Jaye formed Automated and RODGP, LLC. Dkt. 38-2 at 2. According to the undisputed record, each of the companies was administratively dissolved in the 2000s. Dkt. 38-4 at 4. As such, Jaye Defendants argue the dissolved companies have no place in this proceeding. Indeed, beyond general allegations in the complaint, Employers offers no evidence that these companies should continue to be named parties. Within its response to the Jaye Defendants' motion for summary judgment, Employers focuses solely on David Jaye's acts in designing the system at issue. As such, the Court finds these dissolved entities should be dismissed from this action. This leaves for decision the merits of the motion as to David Jaye only.

In 2006, David Jaye sold his interest in his pending patent application for an invention called the "Pickle Tank Heating System and Method of Liquid Heating." Dkt. 38-4 at 4. The entity he sold the pending patent to was PWF. *Id.* According to

Jaye, PWF used the "principles" of his system as the basis for its design of the ThermoFlow Heating System. *Id.* In exchange, PWF agreed to pay Jaye a twenty-five percent royalty for each sale involving a system that was based upon his pickle tank patent. Dkt. 38-2 at 2.

Under the agreement PWF and Jaye also agreed as follows:

> (PWF) agrees that since (Jaye) will not have control over manufacture and installation of the embodied technology, that (PWF) assumes all responsibilities and subsequent liabilities assumed with manufacture, installation and sale of the Thermoflow Heating System, and agrees to hold (Jaye) harmless for any damages that may result from this system.

*Id.* at 3.

Jaye argues that, because it was PWF that sold its ThermoFlow Heating System to TSS, Jaye was in no way involved in the sale of the product at the time it was exchanged. Dkt. 38-4 at 4. In response, Employers contends that Jaye's argument ignores Idaho law regarding liability for design defects. Dkt. 43 at 2. To this end, Employers argues Idaho law does not make a logical distinction between defective manufacture and defective design (citing *Rindlisbaker v. Wilson*, 95 Idaho 752 (1974)). Employers asserts that, for the same reasons it argued in response to PWF's motion for summary judgment, genuine issues of material fact exist as to whether there was a defect in design.

**MEMORANDUM DECISION AND ORDER - 15**

Employers cites the deposition testimony of PWF's Shoemake, who testified that it was Jaye who "designed the heater many years ago" and was "the original inventor." Dkt. 43 at 2. Employers argues that, the fact that Jaye designed the original system, creates a question for the jury of whether Jaye designed "the heater in question," which would subject him to liability for design defect. *Id.* at 3.

After review of the record, the Court finds Employers' argument persuasive. If the design of the heater can be shown to have been a contributing factor to the gap which resulted in the fire, and as PWF argues, it did not modify the design of the heater in any manner, except to add the box it sat in, some liability may be attributable to the designer of the heater. Whether liability ultimately flows from PWF's sale to Jaye is the subject of Jaye's cross-claim and motion for summary judgment discussed immediately below.

Provided the foregoing, the Court will grant Jaye Defendants' motion for summary judgment as to Automated and RODGP and will dismiss these parties and will deny the motion as to David Jaye.

### 3. David Jaye's Motion for Summary Judgment – Docket 39

David Jaye asserts that, regardless of whether Jaye has any possible liability for the design of the heater, under a 2006 agreement with PWF, PWF agreed to completely indemnify Jaye. Dkt. 39-1 at 5. The language of the agreement's paragraph 5 is at play. According to the agreement, PWF assumed "all

responsibilities and subsequent liabilities assumed with manufacture, installation and sale of the Thermoflow Heating System, and agrees to hold (Jaye) harmless for any damages" that may have resulted from the system. *Id.* Jaye asks the Court to issue a declaration of his rights under the agreement and dismiss him from this action. *Id.*

In its response to David Jaye's motion for summary judgment as to his crossclaim, PWF asserts the scope of the license between it and David Jaye is squarely at issue in this matter. Dkt. 42 at 2. PWF argues that, the scope of the agreement's indemnification provision "clearly and unambiguously" does not require PWF to assume all liability and indemnify David Jaye for design defects in the Thermoflow system. *Id.* at 2-3. This argument is provided without any evidence beyond the language cited by David Jaye in paragraph 5 of the agreement, which seems, upon the Court's consideration, to require PWF to provide substantial indemnification to Jaye.

PWF also points to Idaho law as a barrier to the Court issuing any relief at this juncture. Under Idaho indemnification law, a party seeking indemnification must show or prove three elements of indemnity: "(1) an indemnity relationship, (2) actual liability of an indemnitee to the third party, and (3) a reasonable

**MEMORANDUM DECISION AND ORDER - 17**

settlement amount," or the payment of damages. *Chenery v. Agri-Lines Corp.*, 766 P.2d 751, 754 (Idaho 1988).

As PWF argues, Jaye's motion is premature because no actual liability has been established. The Court agrees. There has been no determination of "actual" liability in this case. As such, to conserve judicial resources, the Court will reserve ruling on Jaye's request to determine Jaye's rights under the terms of the 2006 Licensing Agreement should that become necessary in the outcome of this matter.

## CONCLUSION

Having found Employers raised genuine issues for the jury as to the prima facie elements of its products liability claims, the Court will deny Defendants' motions for summary judgment. Considering such finding, the Court declines to provide a ruling on Defendant and Crossclaimant David Jaye's potential indemnification as no actual liability has been established. The issue is noted and may be raised in subsequent stages of the litigation.

## ORDER

**IT IS ORDERED that:**

1. PWF Motion for Summary Judgment (Dkt. 26) is **DENIED**.

2. Jaye Defendants' Motion for Summary Judgment (Dkt. 38) **GRANTED in PART** and **DENIED in PART**.

3. David Jaye's Motion for Summary Judgment (Dkt. 39) is **DENIED**.

DATED: June 29, 2020

B. Lynn Winmill
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 19